Burket, J.
This action is brought under the latter part, of section 6871, Revised Statutes, which reads as follows: “The owner, agent, or operator of every coal mine shall keep a supply of timber constantly on hand, and shall deliver the same to the working place of the miner, and no miner shall be held responsible for accidents which may occur in mines where the provisions of this section have not been complied with by the owner, agent, or operator thereof. ’ ’
By another part of the same section it is made the duty of the miner, “to securely prop the roof of any working place under his control,” under a penalty of fifty dollars fine or thirty days in jail, or both, if he intentionally and wilfully neglects or refuses to perform such duty.
Under this section of the statute it is the duty of the owner, agent, or operator to keep a supply of timber constantly on hand, and to deliver the same to the working place of the miner; and it is the duty of the miner to securely prop the roof of any working place under his control. The duty of each party is clearly defined by the statute, and for a neglect of such duty by either, resulting in an injury to the person or property of the other, an action will lie.
The statute makes it the duty of the owner, agent, or operator to have the timber constantly *49 on hand, and to deliver it to the working place of the miner; and hence the miner is not concerned as to the manner in which .the delivery is made: All he has to prove to make his case, as to that point, is that in fact the delivery was not made. He is not required to ask for the timber, or give any notice. It is his right to have the timber • delivered at his working place at all times without request on his part, and without-notice to any one; and a failure on the part- of the owner, ag-ent, or operator to so deliver timber to the working place of the miner, is negligence, and if. injury is thereby proximately caused to the miner, an action will-lie therefor. Of course only such quantity of timber need be delivered, from time to time, as the miner may in fact need to securely prop the roof of his room. ■
While the charge of the court, as to the. negligence of-the defendant below, is much more lengthy than necessary, and embraces considerations not within the statute, it is, except as to one particular, more favorable to plaintiff in error than the statute warrants, and therefore the company cannot complain.
Upon the question of contributory negligence, the court charged the jury as follows:
“If the plaintiff was negligent, which contributed to his own injury, even in the slightest degree, then in-that case, he cannot recover in this action, although, you may find that the defendant was negligent, and that its negligence was the proximate cause of the injur}?- of the plaintiff. The law requires the plaintiff to use all ordinary care to avoid any injury to himself; that is, such care as an ordinarily prudent and careful man would have used under like or similar circumstances. You *50 are to measure the care that he did use, as you shall find it from the testimony, by the standard that I have given you in charge — that is, the care that an ordinarily prudent and careful man would have used under like circumstances. In determining this question, gentlemen, you are to look to all the evidence; look to the knowledge that the plaintiff had of this particular mine; look to the knowledge that he had of the character of this roof; of what it was composed, its liability to slips, or the liability of the stone to fall. Look to that, and also look to the knowledge — as you may find it from the evidence — that he may have had as to the condition of this roof on Friday, when he left the mine. Also, look to the evidence in determining what he knew of its condition on Monday, at the time he set up these posts, in determining whether an ordinarily prudent and careful man would have gone under this stone at the time of the happening 'of this accident. It is claimed by plaintiff that he was injured some little time after these posts had been set'; that he went under this particular stone that fell, and between these posts, to get a sledge, preparatory to going home; that while stooping-over to pick up this sledge, this stone fell, and he was injured thereby. You are to measure his conduct at the'time of the accident, with the knowledge that he possessed before that time; consider that, and look at his conduct at the time of the happening of this accident.
“It would not be sufficient to defeat the plaintiff in this ease to show that he was'negligent at a time prior to the happening of the accident, unless such negligence contributed to his own injury. Look then, gentlemen, to all the circumstances that have been proved that bear upon this particular ques *51 tion. If you are not satisfied by a preponderance of the evidence that the plaintiff is guilty of negligence, which contributed to his own injury — as I have explained to you in these instructions — and if you are satisfied that the defendant was guilty of' negligence, and that such negligence was the proximate cause of his injury, then in that case, the plaintiff will be entitled to recover.
‘ ‘But, if upon the other hand, you are not satisfied that the defendant was guilty of negligence under the instructions I have given you, or if you are satisfied that it was, and are not satisfied that such negligence was the proximate cause of the injury which plaintiff has sustained, or if you are satisfied that it was the proximate cause of his injury, and you are satisfied by a preponderance of the evidence, that the plaintiff was negligent, and that such negligence contributed to his own injury, even in the slightest degree, then in that case your verdict should be for the defendant.”
To this part of the charge, so far as it goes, the plaintiff in error has no cause for complaint. Plaintiff in error claims, however, that while this part of the charge is, in the abstract, as favorable as it could ask, it does not go far enough to meet the facts of the case, and that the real controversy was not submitted to the jury by the court in its charge.
The defense to the action rested principally upon the application of the doctrine of contributory negligence. The plaintiff avers in his petition that he was without fault or negligence in the premises. This allegation is denied in the answer, and thus issue is fairly joined upon the question of negligence on part of plaintiff below. While the issue, as to plaintiff's contributory neg *52 ■ligence, is thus made up by the averment in the petition and denial in the answer, the course of trial and proof remained the same as if the answer had averred contributory negligence, and the reply had denied the same.
Plaintiff in error, defendant below, claims that the testimony established, or strongiy tended to establish, the following facts:
‘1 The defendant was engaged in operating a coal mine, employing about 300 miners. Trains of cars were hauled 'into the mine, through its main entry, by means of an endless chain. From this main entry, and upon either side of it, passageways were run, upon which opened the various rooms in which the miners were engaged in digging the coal. Empty cars were hauled from the main entry through these passages to the various rooms, and the loaded cars were taken therefrom by a mule hitched to the cars, which were in charge of a driver, whose duties were to deliver such cars to the room of a miner, and to take therefrom to the main entry the cars which the miner had loaded- with coal. The plaintiff was injured about three o’clock in the afternoon on Monday, August 29, by a stone which fell upon his foot from the roof of his room. He was thirty-three years of age, Was a 'practical coal miner, and had worked in this mine about two years. The stone which injured him fell near the second post back from the face of the coal on the left hand side of the track, which is located near the center of the room, and used for the passage of coal cars.
££At the time of the accident plaintiff’s room was well posted. The stone which injured him weighed about 100 to 150 pounds. The ■ plaintiff and his brother, Emil Estievenard, were working in *53 the room at the time of the accident. These two men had opened the room, had done all the work therein since it was opened, and had sole charg’e and control over the room. It was the duty of the plaintiff and his brother to post the room, and the manner in which they posted it for their own safety, or other purpose, and the manner in which the coal was mined was a matter which was controlled by the judgement of the plaintiff and his brother. They also went to work when they pleased and used their own convenience as to when they ceased to work. The furnishing and preparation of the room itself was a part of the work which these miners were employed to perform, and the time during which they worked, and the manner in which they prepared the place in which to work, as well as the manner in which they mined the coal in their room, was left entirely to their own judgment. The room had been driven by these miners about twenty feet from the turn and it was about eighteen feet wide. They went to work on Friday morning about six o’clock and worked until about twelve o’clock on that day, when they ceased work, because the mines did not run upon the afternoon of Friday.
‘ ‘ The mines were idle all day Saturday and all day Sunday, and the plaintiff and his brother went to work in this room on Monday morning about six o’clock, and worked until aboiit the time plaintiff was injured. On Friday morning there were no posts in the room, and the plaintiff asked the driver on three or four occasions for posts. He knew he needed one in order to secure the roof of his room; but he received none, and he and his brother continued working in the room all of Friday until 12 o’clock. Plain *54 tiff testifies that he would have set a post on Friday at the place where the stone fell, as the roof was likely to fall by Monday if it was not supported. Plaintiff asked the driver for props about six o’clock on Monday morning, the day of the accident, when he first went to his room. Afterwards plaintiff and his brother went into the passageway upon which his room opened, through the room of Louis Souillard, and found two posts which they set up in their room on the left of the track and about three feet from the face of the coal, and on the same side of the track drove the room four feet into the coal. About twelve o’clock they went into the room of their neighbor, Louis Souillard, and were told by him to take what posts they needed. They took two posts from those in Souillard’s room, and set them upon the left-hand side of the track about three feet behind the two posts which they had set on that day.
“The plaintiff’s brother, Emil Estievenard, testifies that he sounded the stone which fell, the first thing on entering the room about six o’clock on Monday morning and it sounded loose; that he thereafter repeatedly sounded the stone and that after the four posts were set on Monday, he thought the roof and the stone were safe, though the stone was a little loose. The plaintiff also testifies that the props were delivered into his room; that he unloaded them from the car and threw them to one side; that after he set the four posts he thought he was in security or safe; and that he had no need of other posts.
‘ ‘ That stones of the size and kind which injured plaintiff are almost constantly falling throughout the mine, and the proper and careful propping of a room will not prevent this. ”
*55 Under this state of facts, defendant below claimed that plaintiff below was guilty of such contributory negligence as to prevent a recovery, and the court was requested to give the following separate charges, to the jury:
“1. If a part of the roof of the room in which plaintiff worked was unsafe and liable to fall, and props were needed for its support, and the defendant neglected to ■ furnish the props when needed, and the plaintiff knew the roof was in that unsafe condition, and remained in the room or otherwise exposed himself to the danger from the fall of the roof, when he could have left the room, the plain-' tiff cannot recover in this case.
“2. If a part of the roof of the room in which plaintiff worked was unsafe and liable to fall, and props were needed for its support, and the defendant neglected to furnish the props when needed, and the plaintiff had the means of knowing the roof was in that unsafe condition, and remained in the room or otherwise exposed himself to the danger from the fall of the roof, when he could have left the room, then plaintiff cannot recover in this case.
‘ ‘3. Under the most careful circumstances mining coal is attended with danger, and persons engaged therein are presumed to incur the risks incident thereto, and if the plaintiff in this case knew, or had the means of knowing-, that a part of the roof of the room in which he worked was unsafe and liable to fall, he cannot recover in this ease.
“4. If the defendant in this case neglected to furnish props at the room in which plaintiff worked, and the roof of the room was in a danger *56 ous condition, and the plaintiff knew its condition, then plaintiff cannot recover in this case.
‘ ‘5. If the plaintiff knew the dangerous condition of the roof of the room, and continued in the service in the room, or remained therein, he cannot recover in this case.
“6. If the plaintiff knew of the unsafe or dangerous condition of the roof of the room in which he was at work, then he cannot recover in this case.
“7. If the defendant in this case neglected to furnish . props at the room in which plaintiff worked, and the roof of the room was in a dangerous condition, and the plaintiff had the means of knowing that the roof was in a dangerous condition, then the plaintiff cannot recover in this case.
“8. If the defendant in this case neglected to furnish props at the room in which plaintiff worked, and the roof of the room was in a dangerous condition, and the plaintiff, by the exercise of ordinary care, could have discovered the dangerous condition of the roof of the room, then plaintiff cannot recover in this case.
‘ ‘9. If the plaintiff, by the exercise of ordinary care, could have ascertained that the part of the roof which fell and injured him was in an unsafe condition and liable to fall, and exposed himself to the danger by going thereunder, he cannot recover in this case.
“10. If the plaintiff knew or had reason to apprehend that it would be risky to go under this stone referred to in the testimony that fell on the plaintiff, and with this apprehension and knowledge he took the risk, he cannot recover of the defendant.
*57 “11. If the plaintiff knew or had the means of knowing that the stone which fell and injured plaintiff was loose and liable to fall, and went un der the stone, then plaintiff cannot recover in this action.
“12. That if the plaintiff, at the.time he was injured, was acting by his own will and his own judgment, uncontrolled by anyone connected with that mine, and if it was his duty to have determined whether or not the roof of the mine was safe to work under, and if the plaintiff was injured by his misjudgment, or negligence, he cannot recover in this action, and your verdict should be for the defendant.”
These requests were all pertinent to the case upon the facts as claimed by defendant below, and which were substantially conceded by plaintiff below, and were all sound law when applied to such facts. The plaintiff below was under obligation to use ordinary care for his own safety. Whatever he knew, or ought to have known, and failed to act upon with ordinary care for his own safety, constituted such negligence on his part, as would prevent a recovery. . To warrant a recovery, it m ust appear that the injury was caused, by the want of ordinary care on part of the employer, and the injury is not so caused, when it is caused by the want of ordinary care on part of the employer combined with want of ordinary care on part of the employee. If it took the want of ordinary care of both the employer and employee to produce the injury, both are at fault, and there can be no recovery by either. Where both parties are negligent, and the.injury is caused by such combined negligence, there can be no recovery by either party. Railroad Co. v. Transportation Co., 32 *58 Ohio St., 116, 147; Railway Co. v. Elliott, 28 Ohio St., 340; Kerwhacker v. Railroad Co., 3 Ohio St., 172; Timmons v. Railroad Co., 6 Ohio St., 105, 109.
If the employer has been negligent, - either by omission or commission, and the employee knows of such negligence, or ought to have known thereof, he must act with reference thereto, and cannot shut his eyes and say that he relied upon the employer performing his duties. As to whether the employee was negligent, his actions should be judged by the facts as they existed, within his knowledge, or within what he ought to have known, at the time he acted or failed to act; and the previous negligence of the employer, which was known to the employee, or ought to have been known by him, will not excuse him.
In the case at bar, the failure to furnish props at the working place of the plaintiff below, was negligence on part of defendant below; but if plaintiff knew of this negligence, or ought to have known thereof, and remained in the room, knowing the roof to be dangerous, his injury was directly caused 'by his own negligence in remaining in a room known to be dangerous, and not by defendant’s negligence in failing to furnish props.
Again, if plaintiff below, obtained sufficient props from another room, and therewith propped his room, until he regarded it safe, and then entered the room and was injured, such injury was not caused by the failure of defendant below to furnish props, but by the error in judgment of plaintiff below in believing he had set up sufficient props to make the roof safe. Defendant below should not be charged with this error in the judgment of plaintiff below. Even though defendant below failed to furnish props and was therein neg *59 ligent, yet if plaintiff below knew that the room was dangerous, or ought to have known it, and with this knowledge walked into the room, his injury was caused by his own recklessness, and not by the failure to furnish props. This was not a case in which the employer was to furnish a safe place for the workman, but a case in which the workman made his own place in which to work, and the duty of the employer ended with furnishing props to the working place of the miner. The miner is charged by statute with keeping his working place safe for himself, and all others coming thereto. If he neglects this duty, with props at hand, and fails to keep his working place safe, and is injured thereby, it is his own fault or misfortune, and not the fault of his employer.
The defect in the charge, on the question of contributory negligence is, that it is, in the abstract, dealing with generalities, and failing to deal with the facts of the case as claimed by the parties. Defendant below, by its requests, urged the court to say to the jury that certain facts, if found by the jury, would prevent a recovery; but the court refused to say what acts on part of plaintiff would defeat a recovery, and contented itself by telling the jury to look at all the evidence, t,o look at the knowledge of plaintiff, to look at his acts and conduct, etc., without telling them what use to make of such looking, or of the result thereof.
The charge of the court to the jury should not be in the abstract, but in the concrete, applicable to the particular facts of the case on trial. Bain v. Wilson, 10 Ohio St., 14. Usually the court should say to the jury that the facts as claimed by the plaintiff, if found to be true, do or do not constitute negligence on his part. In like manner the *60 court should say to the jury, that the facts claimed by the defendant, if found to be true, do or do not constitute contributory negligence. Every case turns upon very few controlling facts, usually but one or two, and whichever'way these are found by the jury, the verdict should go. The attention of the jury should be called to these controlling facts with an instruction to return their verdict as they shall find such facts. If the criterion in the case is ordinary care, which is usually defined to be “such care as a reasonably prudent and careful man would exercise under the same or similar circumstances,” more satisfactory results can usually be obtained by the court saying to the jury, as matter of law (if the facts make it a question of law for the court), what under the' circumstances of the case on trial, would constitute such ordinary care. It would then be very easy for the jury to find the facts and return a verdict accordingly. If in a particular case it is not a question of law for the court, as to what would constitute ordinary care, the jury, by a special verdict, might find and say what care a reasonably prudent and careful man' should have exercised under the circumstances of that case, and then find what care the party did in fact exercise, or omit to exercise, and upon such finding’s, the court would be enabled to pass an intelligent judgment, and all parties would be advised as to the real facts upon which the verdict is founded, instead of guessing that it is founded upon “a consideration of all the surrounding facts and circumstances.”
The question as to what care a reasonably prudent and careful man would exercise under the circumstances of the particular case on trial, is either a question for the court or jury, and it *61 would aid justice to have it found and brought into the record, either in the charge or in the verdict, so as to permit its review on motion for a new trial, or on error.
To make “such care as a reasonably careful and prudent man would exercise under the same or similar circumstances,” the criterion' or standard by which the acts and conduct of parties are to he judged, without ascertaining what care such reasonable man would exercise under the particular facts of the case on trial, is to judge men’s a(ets and conduct by an unknown, intangible standard about which every man on the jury would, at first blush, be likely to have different views.
To require the jury to consider this matter, when it is not a question for the court, would induce deliberation, to first define and establish the proper criterion or standard for that case, and then to square the acts and conduct of the parties with such criterion. Many hasty and ill-considered verdicts mighfithus be avoided.
Exception was also taken to the following part of the charg’e as given to the jury:
“It is not necessary, gentlemen, for you to find that the negligence of the defendant was the sole cause of the injury that the plaintiff has s ustained; if the negligence of the defendant concurred in producing this injury, without which plaintiff would not have sustained the injury, or the stone would not have fallen upon him, then in that ease 3K>u will be warranted in finding that the injury was caused by the negligence of the defendant. ’ ’
This is not sound law. If the negligence of the defendant below was not the sole cause of the injury, and the injury was produced by the negligence of defendant concurring1 with the negligence of the plaintiff (and there was no other negligence
*62 with which to concur), then the injury was not caused by the negligence of defendant, but by the concurrent negligence of both plaintiff and defendant, and in such casé there can be no recovery by either party.
For the errors above pointed out, the judgments below are reversed, and the cause remanded to the court of common pleas for a new trial.

Judgment reversed.